Long Beach Canning Co. *v.* Clark *et al.**

[106 So. 646.   No. 25083.]

(Division B.   Jan. 11, 1926.)

1. CORPORATIONS. *Foreign corporation not required to file copy of charter to sell property in state; sale by foreign corporation of specific property in state held not "doing business" therein within meaning of statute requiring filing of charter.*

   Section 935, Code of 1906 (Hemingway's Code, section 4111), requiring foreign corporations doing business in Mississippi to file a copy of their charter of incorporation in the office of the secretary of state, does not prevent a foreign corporation which owns property in Mississippi from selling such property without filing a copy of its charter of incorporation. The mere sale of specific property is not doing business in the state within the meaning of said section. *Harleston* v. *West Louisiana Bank*, 129 Miss. 111, 91 So. 423, cited.

2. CORPORATIONS. *That foreign corporation did business in state without filing charter held not to prevent it from selling property in state to liquidate its affairs; statute prohibiting foreign corporation from transacting business in state unless copy of charter is filed held only to deny right to enforce rights growing out of business transacted contrary to statute.*

   The fact that a foreign corporation did business in the state without filing its charter as required by section 935, Code of 1906 (Hemingway's Code, section 4111), does not prevent it, on discontinuing the doing of business in the state, from selling its property for the purpose of liquidating its affairs. The statute does not forfeit property used in business for a violation of the statute, but denies access to its courts to enforce rights growing out of the doing of business in violation of the statute.

*Corpus Juris-Cyc. References; Corporations, 14aCJ, pp. 1256, n. 72; 1275, n. 15 New; 1301, n. 11.

APPEAL from circuit court of Harrison county.

HON. D. M. GRAHAM, Judge.

Action by the Long Beach Canning Company against W. O. Clark and others. From a judgment dismissing the cause, plaintiff appeals. Reversed and remanded.

*William Estopinal,* for appellant.

It will be observed that the transaction herein involved did not arise from the regular order of transacting business by this appellant, that this appellant had discontinued doing business altogether for a considerable period of time prior to the date of its attempt to sell and dispose of its assets. This transaction did not arise, as between these parties, from doing a business on the part of the appellant but it arose solely and entirely from the fact that the appellant had already gone out of business, was not attempting to sell any of its products that had been manufacured by it in the course of its business but arose entirely out of the liquidation and the closing out of the business of the appellant.

The statutes requiring a foreign corporation to file its charter with the secretary of state, state that it is done in the interest of public policy and of good morals and unless an act of a foreign corporation violates the principle of this statute by any act performed by it, then such act does not violate the statute and the foreign corporation should not be punished as provided for in the said statute for such act. It cannot by the longest stretch of imagination be construed as a violation of the public policy of this state nor as against good morals, for these appellants to have offered for sale their assets in the manner and for the purpose of getting out of business. That being true, the appellees should be required to carry out their part of the agreement and to pay the balance of the purchase price on the assets of the said appellants.

What constitutes doing business in a state has been construed by many courts of many states and of the United States many times, but in our entire research of the authorities we have been unable to find any case directly in point. The cases nearest in point, however, are: *Bartling Tire Co.* v. *Coxe,* 288 Fed. (Ala.) 314; *Smith & Fay* v. *Montgomery, Ward & Co.,* 96 So. (Ala.) 231. In *Alpena Portland Cement Co.* v. *Jenkins & Reynolds*

*Co.,* 91 N. E. 480, it was held that a single transaction
within the state by a foreign corporation does not con-
stitute doing business within the meaning of the For-
eign Corporation Act, and that doing business or trans-
acting business by a foreign corporation does not in-
clude acts nor constitute any part of its ordinary busi-
ness. See, also, *Plew* v. *Board,* 113 N. E. 603; *Ichenhau-
ser Co.* v. *Landrums, Assignee,* 153 Ky. 316, 155 S. W.
738; *George* v. *Oscar Smith & Sons Co.,* 250 Fed. 41
(Miss.); *Broadway Bond St. & Co.* v. *Fidelity Printing
Co.,* 170 S. W. 394; *German-American Bank* v. *Schmidt,*
208 S. W. 878 (Mo.); *Hurst Automatic Switch & Signal
Co.* v. *Trust Co.,* 216 S. W. 954.

In the lastnamed case it was held that the statutes re-
lating to foreign corporations in the state of Missouri
do not purport to deny existence in Missouri to a foreign
corporation for all lawful purposes, but only denies it
the privilege of prosecuting the business for which it
is incorporated without compliance within the laws of
the state requiring qualification. It was held that such
a corporation, without having qualified, may acquire a
title to real estate and sue for an alleged wrong in con-
nection therewith without first taking out a license. This
case is very much in point with the case at bar since the
Missouri statute prescribing the method for foreign cor-
porations to qualify in that state is practically identical
with our Mississippi statute in that regard, and since
in that case the matter involved, affected the rights held
by the foreign corporation in property owned by it in
the state of Missouri. See, also, *Lane* v. *Equitable Trust
Co. of New York,* 262 Fed. 918; *Parker* v. *Ware,* 230 S.
W. 75; *Shields* v. *Chapman,* 240 S. W. 505; *Toledo Rail-
way & Light Co.* v. *Hill,* 244 U. S. 49, 37 Sup. Ct. 591.

When the appellant sold out his property, had been
out of business for some time, was getting ready to sell
all he had in the state and discontinue business alto-
gether, that transaction is not within the meaning or
intent of our statute as it is not a transaction arising out

of the carrying on of the business for which the corporation was created. We submit, therefore, that the court clearly erred in sustaining the demurrer and dismissing the cause of action.

*J. L. Taylor,* for appellees.

Under section 4111, Hemingway's Code, a foreign corporation is required to file a copy of its charter, and pay a fee therefor, in order to have a place of business in the state.

The plaintiff was not engaged in interstate commerce in the matter out of which the suit grew, but was conducting its business in the state and cannot enforce its suit in the courts of this state. *Quartet Music Co.* v. *Haygood,* 108 Miss. 755, 67 So. 211. The above case seems to be absolutely decisive of the case at bar, and we submit that the trial court rendered the correct judgment and the case should be affirmed.

Ethridge, J., delivered the opinion of the court.

The Long Beach Canning Company, a corporation organized under the laws of the state of Louisiana, with a factory and place of business located in the city of Gulfport, Miss., brought suit against the appellees, alleging: That plaintiff being the owner of a certain canning factory, boats, equipment, etc., located in the city of Gulfport, Miss., did sell said plant and equipment at public auction in the city of Gulfport on February 29, 1924. That the sale was conducted by licensed auctioneers and was advertised for three weeks prior to said sale, and that it was stipulated in the advertisement that ten per cent of the purchase price should be deposited with the auctioneers immediately after the sale for the purpose of binding the purchase, and that the remainder of said purchase price would be paid upon the consummation of the sale and the delivery of a deed of conveyance for the

property from the sellers to the buyers.  That at the sale sundry bids were made, and the property was sold to the defendants, the appellees, at and for the sum of eight thousand six hundred and fifty dollars.  That the defendants and each of them stated that W. O. Clark was acting for and on behalf of each of the defendants, and that during the sale the said three defendants consulted with each other and agreed among themselves as to the price that they were bidding, and, while the actual bidding was being done by the said W. O. Clark, he was in fact acting for himself and the other defendants, and that they became joint purchasers of the assets of the Long Beach Canning Company.  That immediately after the defendants were declared to be the purchasers of the said assets, and in compliance with the terms of the sale the defendants deposited with the auctioneers a sum of money equal to two-thirds of ten per cent., stating at the time that it was for the benefit of the defendants. That immediately after the said sale the secretary and treasurer of said Long Beach Canning Company met the defendants at the office of the company for the purpose of closing the trade, at which time the *status* and condition of the assets were thoroughly discussed and gone into, and said defendants and each of them authorized their attorney to prepare a bill of sale embracing the conditions discussed at the said meeting, which conditions were then and there declared to be acceptable to the defendants.  That each of the defendants was present when the bill of sale was prepared, and each of them accepted said conveyance and deed of sale, and then and there agreed to have the conveyance made in the name of W. O. Clark, one of the purchasers of the said property.  That because it was impossible at the time for the three defendants to deliver the balance of the cash purchase price, it was agreed by the parties concerned that on the Tuesday following the parties would meet at the office of the attorney of the defendants, at which time they would pay the price to the plaintiff.

That at the said time and place the attorney of the plaintiff, who was the secretary and treasurer of the Long Beach Canning Company, presented a duly executed bill of sale. That said attorney was thereupon informed that said defendants had not been able to agree upon the method of handling the property between themselves, and that therefore the defendants would refuse and decline to perform their said contract and complete said purchase, and that by reason thereof the sale was not consummated. That the defendants on the afternoon of the same day notified the attorney of the plaintiff that they could not agree among themselves as to the method of operating the canning factory and assets purchased by them at such sale. That thereupon the plaintiff notified each of the defendants by mailing to their address a registered letter notice that, because of their failure and refusal to carry out the contract, plaintiff would proceed to readvertise the same at public outcry, but would hold them severally and jointly liable for any loss that might be sustained by the plaintiff on the resale of the property. That accordingly the property was readvertised and resold at auction, but that the best bid then and there received was three thousand five hundred dollars, and the said property was sold for said sum. That by reason thereof the defendants became liable to the plaintiff in the sum of five thousand and fifty dollars, for which said sum this suit is brought.

The defendants by special plea alleged: That the plaintiff had its domicile and home office in the state of Louisiana, and was engaged in the manufacture and sale of sea food products and other articles of merchandise, and continuously kept on hand in the said city of Gulfport for sale to purchasers said manufactured articles, and constantly did business with a fixed place of business in said city of Gulfport. That plaintiff had not filed a copy of its charter of incorporation with the secretary of state of Mississippi, thereby not complying with chapter 24, Code of 1906, and that by reason thereof it was

contrary to public policy for it to maintain a suit in this behalf.  To this plea was attached a certificate of the secretary of state of Mississippi, certifying that a copy of the charter of incorporation of the Long Beach Canning Company had not been filed with said secretary of state.

The plaintiff filed a replication, in which it alleged: That it should not be barred from having its aforesaid action because, while plaintiff was a corporation under the laws of the state of Louisiana, its sole and only place of business was in the state of Mississippi, and that it did not at any time do any other business in any other state, nor did it own any property of any kind or character in any other state than the state of Mississippi, and that all of its business was transacted in the state of Mississippi.  That all of its property consisted of the plant and necessary operating equipment for the said plant, which was at all times situated at Gulfport, Miss.  That since the 15th day of December, 1923, the plaintiff had ceased to do business in Mississippi and was not a going concern, and was not carrying on any business in this state nor in any other state.  That it had no stock of merchandise, and had not had any stock of merchandise for a long time past, and had no products whatever, and only owned its said plant and equipment which it was endeavoring to sell in the course of liquidation.  That in the selling of said property the plaintiff was not engaged in, nor carrying on, nor doing, any business in the state of Mississippi as such corporation, and that the contract herein sought to be enforced is not contrary to the public policy, nor in contravention of the statutes of the state of Mississippi.

This replication was demurred to by the defendants, and the demurrer was sustained by the court below, and the demurrer extended back to the declaration, and the cause was dismissed at the cost of the plaintiff.

The question for decision is whether the selling of the plant and equipment, under the facts stated in the dec-

laration and in the replication, constituted the doing of business in the state of Mississippi within the meaning of section 935, Code of 1906 (Hemingway's Code, section 4111). In *Quartette Music Co.* v. *Haygood,* 108 Miss. 755, 67 So. 211, it was held that a foreign corporation doing business in this state, which had not filed its charter as required by this section, could not enforce its obligations in the courts of this state. In that case the Music Company had a place of business in the state, and the note sued on arose out of the business so transacted. In *Union Cotton Oil Co.* v. *Patterson,* 116 Miss. 802, 77 So. 795, it was held that the statute did not apply to interstate transactions.

In *Harleston* v. *West Louisiana Bank,* 129 Miss. 111, 91 So. 423, it was held that, where a bank had loaned money to a corporation in this state, and had been compelled to foreclose its deed of trust to collect its debt and had resold the property under a contract providing for certain payments and royalties, to be derived from the operation of the plant by the purchaser, this did not constitute doing business within the state, so as to prevent its recovery under said contract. In 129 Miss. at page 119, 91 So. 425, the court said:

"The question sharply presented here is whether or not the complainant bank by the series of transactions, namely, purchasing the Mississippi mortgages, foreclosing them, purchasing the personal property at the foreclosure sale, leasing the gravel pit from Walker and subleasing it to Harleston, was doing business in Mississippi in violation of this statute. The bill alleges and the testimony shows that the bank had loaned money to certain parties in Louisiana in the regular course of business, taking as security certain collateral and mortgages on the personal property subsequently brought to the gravel pit; that thereafter their debtors gave other mortgages in Mississippi, and for that reason, in order to attempt to realize and collect this indebtedness, it became necessary to transact this business in Mississippi. The end

and aim of the entire transaction was but to protect the indebtedness previously contracted in Louisiana. This is not a doing of business in Mississippi, as contemplated by this section of the Code, but is merely the transaction of an isolated piece of business in Mississippi rendered necessary to protect an indebtedness contracted in Louisiana.''

In *City Sales Agency, Inc.,* v. *Smith,* 126 Miss. 202, 88 So. 625, it was held that, where two motor trucks are sold in this state by an order through an agent of a foreign corporation, and such order was subject to acceptance and was accepted by the foreign corporation at New Orleans, La., the transaction is in interstate commerce, and our statute against doing business in this state (section 935, Code of 1906 [Hemingway's Code, section 4111]), without first complying therewith by recording the charter, is not applicable to interstate commerce transactions; and this is true even though the soliciting agent resides in this state and receives, de·livers, and demonstrates the trucks to the purchaser and receives part cash with written security for the balance at a place within the state, because such application would be a restriction on interstate commerce contrary to the federal constitution.

In the case before us the transaction did not grow out of the operation of the business, nor was it in furtherance of doing business in the state, but it was the selling of the assets of the corporation for the purpose of ceasing to do business in the state. The statute does not forbid a nonresident corporation to sell property in the state owned by it, nor require it to file a copy of its charter in the state for the mere purpose of selling specific property. The corporation, having acquired the property in the state, had a right to dispose of it regardless of the fact that it had previously done business in the state contrary to the public policy and statutes of the state.

The statute does not make a forfeiture of property to the state for the failure to record its charter. It simply refuses the aid of its courts to those doing business in violation of the law without recording their charter.

We think, therefore, that the court below erred, and the judgment will be reversed and the cause remanded for further proceedings.

*Reversed and remanded.*