**MURRAY, EAST & JENNINGS, a partnership; John R. Murray; Jean Smith East; Douglas A. Jennings, Plaintiffs,**

v.

**J & S CONSTRUCTION COMPANY, INC., Defendant.**

**Civ. A. No. J84–0276(L).**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 14, 1985.

William R. Purdy, Ott & Purdy, Jackson, Miss., for plaintiffs.

Michael B. Wallace, Jones Mockbee & Bass, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of the plaintiffs, Murray, East & Jennings (ME & J), a partnership, John P. Murray, Gene Smith East and Douglas A. Jennings, for a preliminary injunction staying the arbitration proceedings initiated by the defendant, J & S Construction Company, Inc. (J & S). After consideration of the evidence presented by the parties at a hearing, the argument of counsel and their memoranda of authorities, the court is of the opinion that the plaintiffs' motion should be denied.

Plaintiffs, John P. Murray, Gene Smith East and Douglas A. Jennings, are partners in ME & J, a general partnership organized and existing under the laws of the State of Mississippi. ME & J was formed for the purpose of developing a medical office complex in Rankin County, Mississippi. In February 1982, Jennings, on behalf of the partnership, entered into a construction management contract for the Rankin County project with J & S in J & S' office in Cookeville, Tennessee. J & S is a Tennessee corporation and, prior to the execution of this contract, had never been involved in a project in Mississippi. Under the contract, disputes were to be settled by arbitration following the filing, within a reasonable time, of a written notice of demand for arbitration with the other party to the contract, the American Architectural Association and the architect.

The contract work was divided into two phases, preconstruction, Article 1.1, and construction, Article 1.2. In performing the preconstruction phase, J & S reviewed and evaluated designs, schedules, and assignment of responsibilities, coordinated contracting procedures and developed bid analyses. J & S also solicited bids through the United States Postal Service for construction work from contractors in several states. By letter dated August 10, 1983, ME & J terminated the contract, stating that J & S had "failed substantially to perform its obligations in accordance with Article 1.1" of the contract. In addition, the letter stated that J & S had not qualified to do business in Mississippi, a step viewed as necessary by ME & J. Prior to receipt of this letter, J & S had completed 1390 hours of work in the preconstruction phase, 100 of which were in Mississippi, and had not begun work in the construction phase. On March 1, 1984, six months after receipt of the letter of termination, J & S informed attorneys for ME & J of its intent to invoke the arbitration clause of the contract.[1]

---

1. The plaintiff contends that J & S has failed to comply with the arbitration demand requirements of the contract, which include filing the demand with ME & J within a reasonable time.

■ The criteria for the issuance of a preliminary injunction are well settled in the Fifth Circuit. The moving party must demonstrate:

1. A substantial likelihood that the movant will prevail on the merits;

2. A substantial threat that the movant will suffer irreparable injury if the injunction is not granted;

3. That the threatened injury to the movant outweighs the threatened harm the injunction may do to the nonmoving party; and

4. That granting the preliminary injunction will not disserve the public interest. *Canal Authority v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). A preliminary injunction is extraordinary relief and should only be granted upon a clear showing by the plaintiff. *Id.*

■ The moving party must first establish a substantial likelihood of success on the merits of its claims. ME & J contends that the arbitration provision is not enforceable under the Mississippi Construction Arbitration Act because J & S has failed to qualify to do business in Mississippi. Section 11–15–101 of the Mississippi Code Annotated provides:

(2) Sections 11–15–101 through 11–15–143 shall apply to any agreement for the planning, design, engineering, construction, erection, repair or alteration of any building, structure, fixture, road, highway, utility or any part thereof, and to any purchase by, or supply to, any contractor or subcontractor qualified to do business in this state of any materials to be used in the planning, design, engineering, construction, erection, repair or alteration of any building, structure, fixture, road, highway, utility or any part thereof; provided, however, that nothing contained in sections 11–14–101 through 11–15–143 shall be construed as amending or otherwise affecting the provisions of sections 65–2–1 through 65–2–17, section 65–1–89, section 65–1–91, and section 77–9–387, Mississippi Code of 1972.

(3) Sections 11–15–101 through 11–15–143 shall also apply to any agreement for architectural, engineering, surveying, planning and related professional services performed in connection with any of the agreements enumerated in subsection (2) of this section.

According to the statute, qualification to do business is a prerequisite for application of the Act only for contractors or subcontractors purchasing or supplying materials for use in the project. Because the work performed by J & S was not of this nature, the company was not required to qualify to do business in order to enforce the arbitration provision.

■ The plaintiffs further argue that, should arbitration be allowed to proceed and an award granted to J & S, the defendant could not enforce the award because of Mississippi's door closing statute. In Mississippi, "no foreign corporation transacting business in this state without a certificate of authority shall be permitted to maintain any action, suit or proceeding in any court of this state." Miss.Code Ann. § 79–3–247 (Supp.1984). A foreign corporation "[t]ransacting any business in interstate commerce" is not considered to be doing business in the state for purposes of this statute. *See* Miss.Code Ann. § 79–3–211 (Supp.1984). This legislation is penal in nature and must be strictly construed. *See Diversacon Industries, Inc. v. National Bank of Commerce,* 629 F.2d 1030, 1032 (5th Cir.1980); *Val-U-King Homes, Inc. v. Taylor,* 301 So.2d 857, 859 (Miss.1974).

In *Diversacon Industries, Inc. v. National Bank of Commerce,* 629 F.2d 1030 (5th Cir.1980), Diversacon, a Florida corporation, was awarded a contract for construction of a portion of an interstate highway. Diversacon utilized the Jackson, Mississippi offices of Con-Plex, another subdivision of Diversacon's parent corporation, United States Industries, Inc. (USI). USI personnel in Jackson inspected the proposed site and provided administrative services for the project, including the negotiation of a subcontract with the Mississippi contractor. Diversacon also secured a

surety agreement with The Mississippi Bank. The plaintiff contended .that the Mississippi door closing statute did not bar the suit because it was involved in interstate commerce and, therefore, exempted by Miss.Code Ann. § 79–3–211.

The Fifth Circuit reversed the district court's order dismissing the suit but agreed with its construction of the statute. *Diversacon,* 629 F.2d at 1032. The district court utilized the test established in *Newell Contracting Company v. State Highway Commission,* 195 Miss. 395, 15 So.2d 700, 703 (1943), wherein the Mississippi Supreme Court stated:

> The usual test of whether or not a foreign corporation is doing business within the meaning of our statutes is whether or not it is doing such acts as are within the function of its corporate powers, and where the business performed is substantial in scope such corporation is held to be doing business.

In *Newell,* the plaintiff, Newell Contracting Company, was an Alabama corporation which had not qualified to do business in Mississippi. Newell established a temporary office in Mississippi, inspected job sites and plans and successfully bid on a state highway project. In performing the highway contract, Newell made purchases, entered into subcontracts with local workers, and furnished equipment, labor and materials in Mississippi. The Mississippi Supreme Court held that Newell's activity constituted doing business within the state under Mississippi's door closing statute. It is clear that J & S's activities in the preconstruction phase of the contract were substantially more limited than those of Newell.

In *Diversacon,* the court determined that the issue presented was "whether Diversacon's activities were intrastate or substantially interstate," that is, whether Diversacon had "localized" its business or had "entered the state 'to contribute to or to conclude a unitary state transaction.'" *Diversacon,* 629 F.2d at 1033 (quoting *Allenberg Cotton Company v. Pittman,* 419

U.S. 20, 32–33, 95 S.Ct. 260, 267, 42 L.Ed.2d 195 (1974)). The court concluded that Diversacon's business in Mississippi constituted interstate activity and the suit, therefore, was not barred by the door closing statute.

■ J & S' work on the contract before termination was conducted primarily outside Mississippi and included interstate activity, such as the solicitation of bids from contractors. The contract, executed in Tennessee, represented J & S' only project in Mississippi, and its activities which were conducted within the state were for the sole purpose of contributing to "a unitary state transaction." Therefore, the court is of the opinion that Mississippi's door closing statute would not bar the defendant's action to enforce an arbitration award.

■ The plaintiffs finally contend that they are entitled to a preliminary injunction because the defendant did not file its notice of demand for arbitration in accordance with the terms of the contract. Section 11–15–105 of the Mississippi Code Annotated provides that any party to an agreement for arbitration may petition the court for an order to proceed with arbitration. "If the court finds that no substantial issue exists as to the making of the agreement or provision, it shall grant the application." Miss.Code Ann. § 11–15–105(1) (Supp.1984). The statute further states: "An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the claim sought to be arbitrated have not been shown". Miss.Code Ann. § 11–15–105(4) (Supp.1984). Although the motion before this court is one in which a party seeks to enjoin rather than to proceed with arbitration, the court is of the opinion that the statute is applicable by analogy. Since the parties did not question the making of the arbitration agreement, arbitration should be allowed to proceed. Questions regarding the timeliness of the demand are to be decided by the arbitrator.[2] Accordingly, the plaintiff has not sat-

2. It is clear that procedural issues are to be

resolved by the arbitrator under the Federal

isfied the first prong of the *Canal Authority* test.[3]

The plaintiff has not demonstrated a substantial threat that it will suffer irreparable injury absent the issuance of this preliminary injunction because the construction of the Rankin County facility is now completed. Consequently, arbitration will not interfere with ongoing work on the project. The harm to J & S, in not being able to arbitrate its claims pursuant to the contract, clearly outweighs any harm that would be suffered by ME & J. ME & J has also failed to satisfy the fourth prong of the *Canal Authority* test, for this court finds that the public interest will be best served by allowing arbitration to proceed according to the terms of the contract.

Accordingly, it is ordered that plaintiffs' Motion for Preliminary Injunction is denied.

Arbitration Act. *See Belke v. Merrill, Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1027 (11th Cir.1982); *O'Neel v. National Association of Securities Dealers,* 667 F.2d 804, 807 (9th Cir.1982); *Conticommodity Services, Inc. v. Phillip & Lion,* 613 F.2d 1222, 1226 (2nd Cir.1980); *Trade Arbed, Inc. v. S/S Ellispontos,* 482 F.Supp. 991, 998 (S.D.Tex.1980).

**3.** The defendant further contends that it is entitled to enforce the arbitration clause pursuant to the Federal Arbitration Act. The plaintiff has not established a substantial likelihood of prevailing against this claim as it appears to the court, on the basis of the evidence adduced, that the contract is one "involving commerce." *See Moses H. Cone Memorial Hospital v. Mercury Construction,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).